1  JESSE A. CRIPPS, SBN 222285
   jcripps@gibsondunn.com
2  LYNN N. HANG, SBN 245576
   lhang@gibsondunn.com
3  LISA S. ENGEL, SBN 273888
   lengel@gibsondunn.com
4  **GIBSON, DUNN & CRUTCHER LLP**
   333 South Grand Avenue
5  Los Angeles, CA 90071
   Telephone: (213) 229-7000
6  Facsimile: (213) 229-7520

7  Attorneys for Defendant NORTHROP
   GRUMMAN CORPORATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN ZINZOW, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION, a Delaware corporation; and DOES 1 to 100, inclusive,<br><br>Defendants. | CASE NO. CV12-04579 R (AJWx)<br><br>The Honorable Manuel Real<br><br>**DEFENDANT NORTHROP GRUMMAN CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL BILATERAL ARBITRATION AND STAY PROCEEDINGS OR, ALTERNATIVELY, TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3); DECLARATION OF JESSE CRIPPS; DECLARATION OF STEVEN ANDERSON**<br><br><u>Hearing</u><br><br>Date:  July 2, 2012<br>Time:  10:00 a.m.<br>Ctrm:  8 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 1

    A.   Zinzow Is Bound By An Arbitration Agreement. ................................ 1

    B.   The Agreement Provides For Mandatory Bilateral Arbitration And Covers The Specific Claims At Issue Here. ......................................... 3

    C.   The Agreement Expressly Prohibits Class-Wide Arbitration. .............. 4

III.   ARGUMENT .................................................................................................. 5

    A.   The Federal Arbitration Act Requires Arbitration. .............................. 5

        1.   The FAA applies here. ................................................................ 5

        2.   The FAA Requires that the Arbitration Agreement Be Enforced According To Its Terms. ............................................. 6

        3.   The Matter Must Be Stayed While Arbitration Proceeds. .......... 9

    B.   Alternatively, Rule 12(b)(3) Requires Dismissal of Plaintiff's Claims Because He Failed to File Such Claims in an Arbitration Venue. ................................................................................................. 10

IV.   CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) .......................................... 6

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) ................................................................................... 10

*AT&T Mobility v. Concepcion*,
  131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ........................................... 4, 5, 6, 7, 8, 10

*Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*,
  502 F.3d 740 (7th Cir. 2007) ................................................................................. 10

*Balen v. Holland Am. Line Inc.*,
  583 F.3d 647 (9th Cir. 2009) ................................................................................. 10

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ...................................... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .............................................................................. 7, 8

*Craig v. Brown & Root, Inc.*,
  100 Cal. Rptr. 2d 818, 84 Cal.App.4th 416 (Cal. Ct. App. 2000) ............................. 9

*Dean Witter Reynolds, Inc., v. Byrd*,
  470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) .......................................... 7

*Doubt v. NCR Corp.*,
  No. C09-5917, 2010 WL 3619854 (N.D. Cal. Sept. 13, 2010) ................................. 9

*Green Tree Fin. Corp. – Ala. v. Randolph*,
  531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ............................................ 8

*Hall Street Assoc., L.L.C. v. Mattel, Inc.*
  552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) ........................................ 6

*Kruzich v. Chevron Corp*,
  No. C11-4488, 2011 WL 6012959 (N.D. Cal. Dec. 1, 2011) .................................... 9

*Lim v. Offshore Specialty Fabricators, Inc.*,
  404 F.3d 898 (5th Cir. 2005) ................................................................................. 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ............................................. 7, 8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) .......................................... 6

*Rosenthal v. Walker*,
  111 U.S. 185, 4 S. Ct. 382, 28 L. Ed. 395 (1884) ..................................................... 2

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974) .......................................... 10

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ................................................................................... 8

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*
  130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) .............................................................. 7

Gibson, Dunn & Crutcher LLP

*Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*
   489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ........................................ 7

**Statutes**

9 U.S.C. § 2 ................................................................................................................ 1, 5, 11
9 U.S.C. § 3 ................................................................................................................ 1, 10, 11
9 U.S.C. § 4 ................................................................................................................ 1, 5, 7, 11

# I.
# INTRODUCTION

On April 24, 2012, Plaintiff Alan Zinzow filed the instant wage and hour lawsuit against his employer, Defendant Northrop Grumman Corporation ("Northrop Grumman"), purporting to seek class-wide recovery on behalf of "hundreds" of "similarly situated" employees throughout the state of California. *See* Declaration of Jesse Cripps ("Cripps Decl."), Ex. A, Complaint, ¶¶ 22, 25. Such claims have no place here—they are subject to a mandatory employment Arbitration Agreement which unambiguously states: "Both you and the Company agree to submit all claims covered by this Program to binding arbitration" [and] "both you and the Company waive the right to bring any covered claim under this Program as a class action." *See* Declaration of Steven Anderson ("Anderson Decl."), Ex. G at 2, 10 ("Employee Mediation/Binding Arbitration Program") (referred to herein as "the Arbitration Agreement"). Accordingly, and as discussed more fully below, Northrop Grumman seeks an order: (a) compelling Plaintiff to submit all claims in this action to bilateral non-class arbitration as required by his Arbitration Agreement (9 U.S.C. §§ 2, 4); and (b) staying all civil court proceedings pending completion of arbitration (9 U.S.C. § 3). Alternatively, because Plaintiff failed to file his claims in the proper arbitration venue, his claims should be dismissed with prejudice pursuant to Rule 12(b)(3) with directions that Plaintiff must pursue bilateral non-class arbitration of his claims in accordance with the express terms of the Arbitration Agreement to the extent he chooses to pursue such claims at all.

# II.
# FACTUAL BACKGROUND

**A.    Zinzow Is Bound By An Arbitration Agreement.**

Northrop Grumman's Dispute Resolution Process is a "comprehensive problem-solving process for [its] employees" and consists of "three internal steps (the Informal Process, Administrative Officer Review and the Management Appeals Committee) and

two external steps (Mediation and Arbitration)." *See* Anderson Decl., Ex. K.  Details regarding the Mediation and Arbitration processes are set forth in the "Employee Mediation/Binding Arbitration Program" ("Arbitration Agreement"), which contains an agreement "to submit any covered disputes to binding arbitration, rather than to have such disputes heard by a court or jury." *See id.*, Ex. G at 1.

On August 24, 2005, Alan Zinzow signed Northrop Grumman's "Dispute Resolution Process Acknowledgement and Agreement" which explains the Arbitration Agreement provides for mandatory arbitration of employment-related claims:

> BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND BOTH THIS ACKNOWLEDGMENT AND AGREEMENT AND THE DRP AND THE GUIDE AND THAT I HAVE HAD AN OPPORTUNITY TO ASK QUESTIONS ABOUT THEM. I AGREE THAT ALL DISPUTES INVOLVING A CLAIM COVERED BY THE DRP WILL BE SUBMITTED TO AND DECIDED IN ACCORDANCE WITH THE DRP, WHICH INCLUDES FINAL AND BINDING ARBITRATION. I RECOGNIZE THAT I AM GIVING UP ANY RIGHT TO A JURY TRIAL OR COURT TRIAL FOR ANY COVERED CLAIM THAT MIGHT ARISE FOLLOWING EMPLOYMENT.  I UNDERSTAND THAT I MAY CONSULT AN ATTORNEY PRIOR TO SIGNING THIS ACKNOWLEDGMENT AND AGREEMENT.
>
> I acknowledge receipt of the DRP and Guide, and I agree to be bound by the DRP as a term and condition of my employment with the Company.
>
> | NAME (PRINT) | SIGNATURE | DATE |
> |---|---|---|
> | Alan M. Zinzow | *[signature]* | 8-24-05 |

*See* Anderson Decl., Ex. A.  Plaintiff was provided new versions of the Arbitration Agreement in 2006 and 2010.  *See id.*, ¶¶ 5, 6, 8, 10.  He received copies both by mail and by email, as reflected by contemporaneous proofs of service.  *See id.*, Exs. E, H, I, K. [1]  He also acknowledged the arbitration program in December 2010 when he signed a disciplinary notice, stating:

---

[1] *See Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S. Ct. 382, 28 L. Ed. 395 (1884) ("The Rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed").

> You are advised that if you believe company policy has not been followed in the issuance of this action you may have rights to dispute it. For information on the Dispute Resolution Process, you should review the company handbook *Working With Aerospace Systems* (on-line at: http://home.as.northgrum.com/home/Pages/default.aspx) or Corporate Procedure CO H103 (on-line at: http://home.northgrum.com/corp_cmd_media/Documents/h103.doc). If you have any questions regarding this process, or would like a hard-copy of either document, please contact your HR Business Partner at (661) 272-6292.

***

ACKNOWLEDGMENT OF RECEIPT:

  
Employee Name                                                    Date: 12-02-10

*See* Anderson Decl., Ex. M. Plaintiff alleges a four year statute of limitations period here. Cripps Decl., Ex. A, Compl., ¶ 22. As such, the 2006 and 2010 versions of the Arbitration Agreement apply to the claims at issue. For example, the 2006 Agreement provides:

> To the extent that you and the Company have previously entered into any agreement to arbitrate particular claims, such prior agreement will remain in effect notwithstanding this Program. To the extent that a particular claim is covered by an obligation to arbitrate under both this Program and such a prior agreement, <u>the provisions of this Program shall govern any claims which arise on or after 1 November 2006, and the provisions of the prior agreement to arbitrate shall govern any claims which arose before that date</u>.

*See* Anderson Decl., Ex. C at 11(emphasis added). A similar provision is contained in the 2010 Agreement. *See id.*, Ex. G at 11.

**B.     The Agreement Provides For Mandatory Bilateral Arbitration And Covers The Specific Claims At Issue Here.**

Under the express terms of the Arbitration Agreement, Plaintiff's claims must be submitted to bilateral arbitration: "Both you and the Company agree to submit all claims covered by this Program to binding arbitration, rather than to have such claims heard by a court or jury." *See* Anderson Decl., Ex. C at 2 (2006 Agreement); *Id.*, Ex. G at 2 (2010 Agreement). With limited exceptions, the Agreement applies to all employment-related claims: "[T]his Program covers and applies to any claim, controversy, or dispute, past, present, or future [w]hich in any way arises out of, relates

Gibson, Dunn & Crutcher LLP

3

to, or is associated with your employment with the Company[.]" *Id.* It also provides specific examples of covered claims, including the very claims at issue here—i.e., claims for "[w]ages or other compensation due" and for "[a]ny violation of applicable federal, state, or local law, statute, ordinance, or regulation." *Id.,* Ex. C at 3 (2006 Agreement); *Id.*, Ex. G at 3 (2010 Agreement).

### C.     The Agreement Expressly Prohibits Class-Wide Arbitration.

By its terms, the Arbitration Agreement also provides for an express waiver of class-wide arbitration in favor of bilateral arbitration. It provides: "[B]oth you and the Company waive the right to bring any covered claim under this Program as a class action" and "the arbitrator will not have authority or jurisdiction to consolidate claims of different employees into one proceeding, nor shall the arbitrator have authority or jurisdiction to hear the arbitration as a class action." *See* Anderson Decl., Ex. C at 10 (2006 Agreement); *Id.*, Ex. G at 10 (2010 Agreement). In fact, when Plaintiff received the Arbitration Agreement in 2006, he was expressly advised of this change. *Id.*, Ex. J ("Summary of Updates to Dispute Resolution Process").

The benefits of such an agreement to forego class-wide arbitration in favor of bilateral arbitration were recently explained by the Supreme Court in *AT&T Mobility v. Concepcion*: "[T]he switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." 131 S. Ct. 1740, 1751, 179 L. Ed. 2d 742 (2011). For this reason, the Court concluded that class action waivers must be "enforced according to their terms" because "requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and [] creates a scheme inconsistent with the FAA." *Id*. at 1748, 1753. In addition to those identified by the Supreme Court, the Agreement here also includes several other advantages to employees. For example, it provides that arbitration costs will be "borne entirely by the Company." *See* Anderson Decl., Ex. G at 8. It permits employees to

forego the exhaustion of administrative remedies. *Id*. at 4.[2] And, in some cases, it extends the statute of limitations period. *Id*. at 6.[3]

Notwithstanding these substantial benefits and the express language of the Arbitration Agreement, Plaintiff has declined to submit this lawsuit to bilateral arbitration. *See* Cripps Decl., ¶ 3.

## III.
## ARGUMENT

**A.   The Federal Arbitration Act Requires Arbitration.**

The Federal Arbitration Act ("FAA") provides that any agreement within its scope "shall be valid, irrevocable, and enforceable" and reflects a "liberal federal policy favoring arbitration." *See* 9 U.S.C. § 2; *Concepcion*, 131 S. Ct. at 1745. Indeed, as the Supreme Court recently explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. To accomplish this objective, the FAA permits a party aggrieved by the refusal of another to arbitrate under a written arbitration agreement to petition a district court for an order compelling arbitration in the manner provided by the agreement. *See* 9 U.S.C. § 4; *Concepcion*, 131 S. Ct. at 1748. Northrop Grumman respectfully requests such an order here.

   **1.   The FAA applies here.**

The FAA applies to all agreements involving or "evidencing a transaction involving commerce." 9 U.S.C. § 2. The term "involving commerce" is broadly

---

[2] "If it is a legal requirement that you pursue or exhaust available remedies . . . you are not required to do so before demanding arbitration[.]"

[3] "If the time to file a covered claim in court would run from the date that you pursue or exhaust remedies before a government agency, and you elect not to pursue or exhaust your claim before that government agency, then a demand for arbitration of such claim must be made within thirty (30) days of the last day on which a claim, charge, or complaint could have been timely filed with the government agency."

construed and applies to any contract affecting interstate commerce to the full extent of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 276-77, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)*; Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n.7, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).

The "commerce" requirement is certainly met here. Using interstate media to market and advertise, Northrop Grumman sells products and services to customers in 25 nations. *See* Anderson Decl., ¶ 2. It also maintains a network of more than 30 regional business development offices and local businesses, including out-of-state contractors, to serve customers in key international markets in Europe, the Middle East, and Asia Pacific. *Id*. Plaintiff alleges that he participates in this network as an employee ("Aircraft Mechanic Lead") of Northrop Grumman. Cripps Decl., Ex. A, Compl., ¶ 4. As such, the Arbitration Agreement at issue necessarily "involve[s] commerce." *See Dobson,* 513 U.S. at 276-77.[4]

### 2. The FAA Requires that the Arbitration Agreement Be Enforced According To Its Terms.

The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. *Concepcion*, 131 S. Ct. at 1745 (citing *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)). It reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *Id*. As the Supreme Court recently explained:

> [O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as "embody[ing] [a]

---

[4] The Agreement also expressly provides that the agreement is governed by the FAA: "The parties' obligation to arbitrate claims under this Program may be enforced in any court of competent jurisdiction, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, or applicable state law." *See* Anderson Decl., Ex. C at 2; *id.*, Ex. G at 2.

national policy favoring arbitration' . . . and 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary[.]"
*Id*. at 1749 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id*. at 1748. "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms[.]" *Buckeye*, 546 U.S. at 443; *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). Those contractual terms must be enforced "notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 131 S. Ct. at 1749; *see also id.* at 1753 ("States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.").[5]

Indeed, by its very terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis in original) (quoting *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). "The standard for demonstrating

---

[5] *Cf. Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010); *Concepcion,* 131 S. Ct. at 1750 ("an arbitration panel exceed[s] its power . . . by imposing class procedures based on policy judgments rather than the arbitration agreement itself"). In *Stolt-Nielson,* the Supreme Court held that where an arbitration agreement is governed by the FAA, class wide arbitration is forbidden unless the arbitration agreement expressly permits such actions to proceed. In dismissing the public policy concerns raised by respondent, the *Stolt-Nielson* court concluded that the parties' agreement governs the outcome of a motion to compel arbitration and that public policy arguments cannot trump that agreement. *Stolt-Nielson,* 130 S. Ct. at 1767 ("[T]he task of an arbitrator is to interpret and enforce a contract, not to make public policy").

arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).  As such, the court "shall make an order directing the parties to proceed to arbitration," 9 U.S.C. § 4, upon determination that (1) a valid arbitration agreement exists, and (2) the agreement encompasses the dispute at issue.  *Chiron Corp.,* 207 F.3d at 1130.  In its review, this Court "must be cognizant of the [FAA's] federal policy favoring arbitration agreements:  The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 1131 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

Moreover, the Supreme Court has instructed that the "party resisting arbitration" "bears the burden of proving the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).  The record here leaves no doubt there is a valid agreement to arbitrate between the parties which encompasses the dispute at issue.  As such, the FAA requires this Court to enforce the Arbitration Agreement in accordance with its terms.  *Chiron Corp.*, 207 F.3d at 1130; *Concepcion*, 131 S. Ct. at 1745.  Those terms prohibit classwide treatment and require that the matter be sent to bilateral arbitration.  Applying those terms, and in accordance with the "national policy favoring arbitration," this Court should compel bilateral non-class arbitration.  *Concepcion*, 131 S. Ct. at 1749.

Plaintiff cannot be heard to disclaim the existence of the Arbitration Agreement.  He signed an acknowledgment of the Agreement in 2005.  And when the 2006 version of the Agreement was issued, he was specifically advised that:  "By accepting or continuing employment on or after 1 November 2006, all covered employees agree to submit any covered disputes to binding arbitration. . . ."  Anderson Decl., Ex. C at 1.

The same is true of the 2010 Agreement. *Id.*, Ex. G.[6] Plaintiff also acknowledged the existence of the Arbitration Agreement in December 2010, in connection with disciplinary action, when he signed his name to an acknowledgment that expressly referenced the Arbitration Agreement and that provided a direct internet link to the Agreement. *Id.*, Ex. M. At each point, after receiving the Agreement, Plaintiff has chosen to continue his employment with Northrop Grumman. *Id.*, at ¶ 13. He remains an employee to this very day. *Id.* And in each year since 2006, he has continued to reap the benefits of his employment, having made in excess of $29,000/year in 2006, $41,000/year in 2007, $47,000/year in 2008, $66,000/year in both 2009 and 2010, and $45,000/year in 2011. *Id.*, at ¶ 14.[7] For all of these reasons, and to allow the parties to utilize "efficient, streamlined procedures tailored to the type of dispute," this Court should enforce the Arbitration Agreement according to its terms. *Concepcion,* 131 S. Ct. at 1749.

### 3. The Matter Must Be Stayed While Arbitration Proceeds.

Section 3 of the FAA also requires that the case be stayed until arbitration is complete:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such

---

[6] The 2010 Agreement states: "By accepting or continuing employment on or after 1 November 2006, all covered employees agree to submit any covered disputes to binding arbitration . . . ." Anderson Decl., Ex. G at 1.

[7] *See Kruzich v. Chevron Corp.,* No. C11-4488, 2011 WL 6012959, at *4 (N.D. Cal. Dec. 1, 2011) (by continuing employment, employee was bound by the arbitration agreement which expressly stated that continued employment would mean the employee agrees to use the dispute resolution policy); *Doubt v. NCR Corp.,* No. C09-5917, 2010 WL 3619854, at *4 (N.D. Cal. Sept. 13, 2010) (valid arbitration agreement between the parties where defendant provided policy change through a memorandum, informed plaintiff his continued employment and acceptance of employment-related benefits conveyed acceptance of agreement, posted the full language of the policy on the internet for employees, and where plaintiff continued employment with defendant for several years); *Craig v. Brown & Root, Inc.*, 84 Cal.App.4th 416, 422, 100 Cal. Rptr. 2d 818 (Cal. Ct. App. 2000) (employee who received a copy of the employer's "Dispute Resolution Program" and continued to work "thereby agreed to be bound" by the agreement).

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also Concepcion*, 131 S. Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'"). Here, the plain language of Section 3 requires that the case be stayed until the completion of arbitration.

## B. Alternatively, Rule 12(b)(3) Requires Dismissal of Plaintiff's Claims Because He Failed to File Such Claims in an Arbitration Venue.

Alternatively, the Court should dismiss Plaintiff's claims with prejudice for failing to bring the claims in the contractually mandated arbitration forum. A motion to dismiss premised upon a forum selection clause is properly brought under Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).[8] In resolving such motions, "[the] pleadings are not accepted as true," and the court may "consider facts outside of the pleadings." *Id.*

Here, Plaintiff agreed to mandatory bilateral arbitration in lieu of having his "claims heard by a court or jury." *See* Anderson Decl., Ex. C at 2; *id.*, Ex. G at 2. The Agreement provides that such claims must be brought in arbitration, and that

---

[8] *See also Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652, 656 (9th Cir. 2009) (affirming district court's grant of Rule 12(b)(3) motion, finding that claims were subject to arbitration under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Awards); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) (dismissal under 12(b)(3) appropriate where agreement called for arbitration in the Philippines); *see also Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (noting that the Supreme Court has held that arbitration clauses are "a species of forum selection clause" and that the Seventh Circuit has followed the majority rule in using 12(b)(3) as a basis for seeking dismissal on a forum selection clause, including an arbitration clause); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519-20, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974) (agreement of the parties to arbitrate disputes before the International Chamber of Commerce in Paris, France is to be enforced by the federal courts).

Gibson, Dunn & Crutcher LLP

10

arbitration is the appropriate tribunal for such claims: "JAMS or [] AAA [will] administer the arbitration." *See* Anderson Decl., Ex. C at 7; *id.,* Ex. G at 7. It further provides that the location will be determined by the arbitrator: "[T]he location, and the conduct of the hearing will be determined by the arbitrator, consistent with The Arbitration Rules; provided, however, that, unless you and the Company agree otherwise, the arbitration will be held in the city nearest to the work location where you are or were principally assigned." *Id*., Ex. C at 9; *id.*, Ex. G at 9. Because Plaintiff agreed to bilaterally arbitrate his claims in a particular forum, and because he failed to bring his claims in that forum, venue in any court is not proper and Plaintiff's claims should be dismissed with prejudice under Rule 12(b)(3) with directions that Plaintiff is required to pursue bilateral non-class arbitration of his claims in accordance with the Arbitration Agreement to the extent he chooses to pursue such claims at all.

## IV.

## CONCLUSION

For all the foregoing reasons, Northrop Grumman respectfully requests an order: (a) compelling Plaintiff to submit all claims to bilateral non-class arbitration as required by his Arbitration Agreement (9 U.S.C. §§ 2, 4); and (b) staying all civil court proceedings pending completion of arbitration (9 U.S.C. § 3). Alternatively, because Plaintiff failed to file his claims in the proper arbitration venue, his claims should be dismissed with prejudice pursuant to Rule 12(b)(3) with directions that Plaintiff must pursue bilateral non-class arbitration of his claims as required by the express terms of the Arbitration Agreement to the extent he chooses to pursue such claims at all.

///

///

///

Gibson, Dunn & Crutcher LLP

11

DATED: June 1, 2012

GIBSON, DUNN & CRUTCHER LLP


By: _____/s/ Jesse A. Cripps_____
                Jesse A. Cripps,

Attorneys for Defendant Northrop Grumman Corporation